[14315. Department One. — June 7, 1893.]

98   465
109   60

## THOMAS RICO ET AL., APPELLANTS, v. MEYER BRANDENSTEIN ET AL., RESPONDENTS.

HUSBAND AND WIFE — SEPARATE PROPERTY OF WIFE — CONVEYANCE TO HUSBAND IN TRUST VOID UNDER ACT OF 1857. — Under the law of this state, as it existed in 1857, requiring a husband and wife to join in the conveyance of her separate property, a husband and wife could not legally convey her separate real estate to the husband, and a deed of trust to the husband, executed by the husband and wife jointly, was void and passed no title.

ID. — VALIDITY OF TRUST — CAPACITY OF DONOR. — A trust is valid only to the extent of the legal capacity of the one creating it; and in the absence of a statute expressly permitting it, a wife has no common-law capacity to convey property in trust to her husband.

ID. — STATUTORY CONSTRUCTION — PROVISIONS FOR BENEFIT OF WIFE. — Statutes empowering a wife to convey her real property by joining with her husband in the deed of conveyance are for the benefit of the wife and not of the husband; and any construction thereof which would result in making it more easy for the husband to secure control of the estate of the wife would tend to defeat the object of the law.

ID. — INCAPACITY OF HUSBAND TO TAKE BY GIFT FROM WIFE — COMMON LAW. — The inhibition of the common law as to the conveyance of property by husband and wife to one another, as applied to the husband, was that he could neither convey to his wife directly or be a grantee from her; and while the right of the wife to take by gift removes the impediment to a voluntary conveyance from the husband to her, yet the right to receive such voluntary conveyance from the wife was not conferred upon the husband under the act of 1857, and he stood thereunder, as at common law, incapacitated from taking by deed of gift directly from his wife.

ID. — POWER OF MARRIED WOMAN TO CONVEY OR DEVISE — INCOMPETENCY OF GRANTEE OR DEVISEE — DISABILITY OF HUSBAND. — The power granted by statute to married women "to convey and devise real and personal property as if she was unmarried" does not enlarge the powers of the grantees under conveyances made by her, nor permit her to convey or devise her property to one incompetent to take from her by conveyance or devise; and to render a conveyance from a wife to her husband valid, the husband's common-law disability, as well as that of the wife, must be removed.

APPEAL from a judgment of the Superior Court of Monterey County, and from an order denying a new trial.

The facts are stated in the opinion.

XCVIII. CAL. — 30

*Pillsbury, Blanding & Hayne,* for Appellants.

*Edward R. Taylor, Reinstein & Eisner,* and *James M. Seawell,* for Respondents.

SEARLS, C.—Appeal from a judgment in favor of defendants, and from an order denying a motion for a new trial.

The action was brought for a partition of the southeast two-thirds of the Rancho San Barnardino, situate in the county of Monterey. The two plaintiffs claim to be the owners of an undivided one-eighth, each as tenants in common, with defendants Brandenstein and Godchaux, who are averred to be each the owner of an undivided three-eighths in said rancho. The answer denies the ownership of plaintiffs, or that they were ever tenants in common with defendants, and avers ownership in defendants to the entire tract of land except as to certain lots conveyed by them to third parties. The area of the land in question is 8,901 and 25-100 acres. Francisco Rico, the father of the plaintiffs, on the tenth day of January, 1855, became the owner of the premises in controversy, and on August 27, 1855, conveyed the same by deed to Tomasa Sepulveda Rico, his wife. The title asserted by plaintiffs in the action rests upon a deed of trust of the premises, dated November 9, 1857, executed by Francisco Rico and Tomasa Sepulveda Rico, his wife, as parties of the first part, to the said Francisco Rico, as party of the second part. The deed purports to be in consideration of $15,000, paid to the parties of the first part by Theodora Gonzales and Jose Sepulveda, the receipt of which is acknowledged and which the proofs show was actually paid. The remaining portions of the deed important to the inquiry are as follows: "And by these presents doth bargain, sell, remise, release, and quit-claim and convey unto Francisco Rico, in trust for and the use, interest, behoof, benefit of Guadalupe Rico, Francisco Rico, Junior, Vicente Rico, and Alexander Rico, all being legitimate children of the parties of the first part hereof, . . . . all now living, and all other offspring that may be born hereafter of the said parties of the first part thereof, all the right, title, and interest of the parties of the first part hereof in and to . . . . This conveyance is intended as a deed of trust, to be held by the said Francisco Rico, under the express condi-

tions hereinafter set forth, that is to say, to hold the same afore-mentioned premises to, and for the uses, interests, and purposes of the said minors, Guadalupe, Francisco, Vicente, and Alexander Rico, now living, and also all other children that may be born hereafter of the said parties of the first part hereof, to receive the rents, issues, and profits of the said lands and improvements thereon, and apply the same to the use and benefit of the said afore-mentioned children now living, and all others that may be born hereafter of the said parties of the first part hereof during their natural lives." Then follows a clause authorizing the said Francisco Rico to appoint his successors as trustee of said property for said children during his lifetime and by will after his death. The trustee and beneficiaries are forbidden to sell, pledge, or hypothecate, the land and premises described in the deed. The deed was duly acknowledged and recorded in the office of the county recorder of the county of Monterey, November 9, 1857.

Francisco Rico, the grantee of the deed of trust, was one and the same person with Francisco Rico, one of the grantors, and the grantors were husband and wife. The plaintiffs herein were their children, born subsequent to the execution of the deed of trust. Defendants Brandenstein and Godchaux hold the premises under a conveyance in trust, executed by the same grantors in 1862, to third parties as trustees.

It was admitted at the trial for the purposes of the case, that if plaintiffs are not the owners of two-eighths of the rancho defendants are the owners thereof.

The first question presented by the record relates to the validity of the deed from Rico and wife to the husband. It must be assumed that at common law the wife could not convey her separate property to her husband. The contention of appellant is, that conceding the property to have been the separate property of the wife, still, at the time of the deed there was under the statute of this state no restriction upon such a conveyance.

Section 14 of article XI. of the constitution of this state, adopted October 10, 1849, provided that "All property, both real and personal of the wife, owned and claimed by her before marriage, and that acquired afterward by gift, devise, or

descent, shall be her separate property, and laws shall be passed more clearly defining the rights of the wife in relation as well to her separate property as to that held in common with her husband." By an act approved April 17, 1850, the legislature, in obedience to the requirements of the constitution, passed a law by which the husband was given "the management and control of the separate property of the wife during the continuance of the marriage, but no sale or other alienation of any part of such property can be made, nor any lien or encumbrance created thereon unless by an instrument in writing, signed by the husband and wife and acknowledged by her upon an examination separate and apart from her husband before," etc. The seventh section of the same act provided, "that when any sale shall be made by the wife of any of her separate property for the benefit of her husband, or when he shall have used the proceeds of such sale with her consent in writing, it shall be deemed a gift, and neither she nor those claiming under her shall have any right to recover the same." (Stats. 1850, p. 254). An act concerning conveyances, passed April 16, 1850, provides as follows:—

"Sec. 19. A married woman may convey any of her real estate by any conveyances thereof, executed and acknowledged by herself and her husband, and certified in the manner hereinafter provided by the proper officer taking the acknowledgment." A number of other statutes might be referred to tending to indicate the evident policy of our law-makers, to loosen the chains which bound married women at the common law, and so far as their separate property is concerned, to confer upon them like power of alienation with that possessed by their husbands. Step by step the work has gone on until now "a conveyance by a married woman has the same effect as if she were unmarried, and may be acknowledged in the same manner." (Civ. Code, sec. 1189.)

We are dealing, however, with a question which depends not upon the present condition of the law, but upon the *status* and rights of married women as they existed in 1857, the date of the deed under consideration. No question is made here as to the due execution of the deed by the husband and wife, or that it was properly acknowledged as required by statute. The

contention of respondents in this behalf is that the deed is void, because at the date of its execution, to wit, November 9, 1857, a married woman could not convey real property directly to her husband. The husband was required to join in the conveyance. The objects of the statute in requiring the husband to join with his wife in the conveyance of her separate property, as it has been said, was to afford her his protection against imposition and fraud, and to aid her by his counsel and advice. (*Meagher* v. *Thompson*, 49 Cal. 190.) The requirement of the statute is analogous to the rule of the civil law, under which the wife must have the authorization of her husband, or a decree of a judge, before she could convey any of her rights or enter into a civil contract. The wider experience of men in business affairs, their better opportunities for becoming conversant with property values, and the mode of its transfer, as well as the important object of promoting unity of purpose and harmony of action in the close relation existing between husband and wife, may well have conduced to the enactment of the law requiring them to join in a conveyance of property, which, while belonging to the wife, was yet subject to the management and control of the husband. The law required them to join in the conveyance, and there is no disposition to question either its wisdom or its binding force, and these remarks are only indulged as tending to a better understanding of the cognate question, Can the husband and wife convey her separate real property to the former?

This court has repeatedly decided that a husband, when free from debt, may make a gift to his wife of either his separate property or of the community property of the husband and wife. (*Barker* v. *Koneman*, 13 Cal. 9; *Peck* v. *Brummagim*, 31 Cal. 441; 89 Am. Dec. 195; *Dow* v. *Gould etc. Co.*, 31 Cal. 653; *Woods* v. *Whitney*, 42 Cal. 361; *Higgins* v. *Higgins*, 46 Cal. 263.) It does not necessarily follow that the converse of the proposition is true, and that the wife can convey by way of gift to her husband. If, however, she cannot do so, or rather, if she could not do so under the law we are considering, viz., the statute in force in 1857, it must be because of the inherent condition of the parties as husband and wife.

The owner of property competent to convey may convert him-

self into a trustee by making a proper declaration of the trust in writing. (*Suarez* v. *Pumpelly*, 2 Sand. Ch. 336; *Pinkett* v. *Wright*, 2 Hare, 120.) A trust is valid only to the extent of the legal capacity of the one creating it. (Tiffany & Bullard on Trusts and Trustees, p. 2.) Any person may create a trust who is capable of making a valid distribution of property. The power to dispose of property involves the right to attach such limitations to the act of disposition as will vest the legal estate in one and the beneficial interest in another. At common law neither husband nor wife could convey property directly to the other. The power to alienate and to take property on the part of the husband was unaffected by marriage, except in the single instance of conveyances to and from his wife. To the wife the common-law system was a source of constant repression. Her husband became the absolute owner of her personal property, and was entitled to the rents, issues and profits of her real estate. To relax the severity of the rules of her environment as a wife, many of the states have adopted laws similar to the one under consideration, empowering her to convey her real property by joining with her husband in the deed of conveyance, and in a few of the states, New York and California (since 1891) included, a conveyance by a married woman may be made in the same manner, and has the same effect as if she were unmarried. Under these laws, however, the courts in numerous instances still adhere to the doctrine that the wife cannot convey her property directly to her husband.

The general result of the reasoning of the cases may be summarized as follows:—

1. These statutes are for the benefit of married women and not for that of their husbands; and any construction which would result in making it more easy for the husband to secure control of the estate of the wife would tend to defeat the very object of the law.

2. The inhibition of the common law, as applied to the husband, was that he could neither convey to his wife directly or be a grantee from her; and while the right of the wife to take by gift removes the impediment to a voluntary conveyance from the husband to her, yet the right to receive such voluntary conveyance from the wife has not been conferred upon the hus-

band, and he stands as at common law incapacitated from taking by deed of gift directly from his wife.

3. The "power to convey and devise real and personal property as if she was unmarried" does not enlarge the powers of the grantees under conveyances by her, and she could not devise to a corporation or person incapable of taking by will, or convey to one incompetent to be a grantee.

4. To render a conveyance from the wife to her husband valid, the husband's common-law disability, as well as that of the wife, must be removed. (*White* v. *Wager*, 25 N. Y. 328; *Brooks* v. *Kearns*, 86 Ill. 547; *Scarborough* v. *Watkins*, 9 Mon. B. 545; 50 Am. Dec. 528; Card's Legal and Equitable Rights on Married Women, sec. 428; Am. & Eng. Encycl. of Law, title "Husband and Wife," p. 794; Bishop on Married Women, secs. 711, 712; *Kinnaman* v. *Pyle*, 44 Ind. 275; *Winans* v. *Peeb'es*, 32 N. Y. 428; *Sims* v. *Rickets*, 35 Ind. 181; 9 Am. Rep. 679.)

I find no case extant in which under a statute requiring the husband and wife to join in the conveyance of her separate property, a sale and conveyance from the latter to the former has been sustained. The law having provided for the joinder of the husband in this class of conveyances, with a view, as has often been declared by this court, of giving the wife the benefit of the husband's counsel, advice, and judgment, it would seem strange and illogical to permit him at the same time to act as her opponent, as one working against her interests and seeking to obtain her land for himself, either with or without limitations upon the effect of the conveyance.

In Colorado, Iowa, and some other states, statutes have been passed giving to married women the same rights of alienation of their separate property as those enjoyed by unmarried women. Where such laws prevail, we may reasonably expect to see their right to convey directly to their husbands as well as to others finally upheld, as has already been done in a number of cases. (*Wells* v. *Caywood*, 3 Colo. 487; *Simms* v. *Henry*, 19 Iowa, 287; *Robertson* v. *Robertson*, 25 Iowa, 350; *Allen* v. *Hooper*, 50 Me. 371; *Burdeno* v. *Amperse*, 14 Mich. 97; 90 Am. Dec. 225.)

The views herein enunciated are expressly confined to an interpretation of the statute as it existed prior to the amend-

ment of 1891, and are not intended as an exposition of the rights of married women under the broader *ægis* of that amendment.

I am of opinion that under the law as it existed in 1857, the husband and wife could not legally convey her separate real estate to the husband, and that the deed of trust to the latter, set out in the record, was void.

This view renders a consideration of the other points made in the case unimportant.

The judgment and order appealed from should be affirmed.

TEMPLE, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

HARRISON, J., GAROUTTE, J., PATERSON, J.