## Kutz's Appeal.

*Remedy of Wife when Husband is one of two or more Debtors.—
Statute of Limitations as to such Contract.—Rule as to hearing of
Exceptions, not made before Appeal to Supreme Court.*

1. A married woman in 1845, lent to her husband and another trading in partnership, a sum of money on interest, out of her own separate estate. In 1857 the firm made an assignment for the benefit of creditors. Upon distribution of the firm assets, under the assignment, it was *held*, that she was entitled to a distribution upon the amount of her note with interest, and that her claim was not barred by the Statute of Limitations.

2. The wife could not maintain an action at law against the promissors, for one of them was her husband; and if the money was held *in trust*, and was not recoverable at law, the Statute of Limitations would not run against her. The disability of coverture, in equity as well as in law, under which she was, from the date of the note to the assignment, would prevent the running of the statute; so that she was not barred of her claim in equity.

3. Where the wife's claim was resisted before the auditor and in the court below, on the sole ground that it was barred by the statute, it is too late afterwards to object, that there was no proof that the sum loaned was not her separate estate. She was permitted to receive and loan out the money, and neither her husband nor the creditors claiming through him, can object that the money loaned was not hers.

APPEAL from the Common Pleas of *Berks county*.

This was an appeal by Daniel B. Kutz and Sarah his wife, in right of said Sarah, from the decree of the court, distributing the fund in the hands of J. Daniel Wanner, assignee of William Heidenreich and Daniel B. Kutz.

The case was this:—William Heidenreich and Daniel B. Kutz were partners, doing business as merchants in the name of Heidenreich & Kutz, in Kutztown, in the county of Berks, prior to and on the 25th of November 1845, which was continued until the 8th of August 1857.

On the 25th of November 1845, Sarah Kutz, the wife of the said Daniel B. Kutz, loaned the sum of $500 to the said William Heidenreich and Daniel B. Kutz. A note, dated on said day, was executed and delivered to her by William Heidenreich for said sum of $500, payable in one year, with interest. Said note was executed in the name of Heidenreich & Kutz, and the money was received by said Heidenreich for said firm from her.

On the 8th of August 1857, they made a general assignment to J. Daniel Wanner, for the benefit of their creditors.

The assignee's account was filed December 17th 1858, and was referred to an auditor, before whom Sarah Kutz, by her attorney, appeared with said note, and claimed the amount due thereon in the distribution. The creditors of the firm of Heidenreich &

[Kutz's Appeal.]

Kutz objected to the claim, alleging that it was barred by the Statute of Limitations.

The receipt of the money and the execution of the note was proved, under exception,.before the auditor, by Mr. Heidenreich, who testified that he "understood that Mrs. Kutz had got this money from Heffner's estate ; that the debt was a just one, which ought to be paid ; and that he never considered it barred by the Statute of Limitations." The claim was allowed by the auditor in his report, filed May 21st 1859. Exceptions were filed to the allowance of this claim, which, on hearing, were sustained by the court below, and her dividend stricken from the report.

The case was then removed into this court, where the decree of the Common Pleas was assigned for error.

*John Banks*, for appellant.—1. The testimony of Mr. Heidenreich destroys the plea of the Statute of Limitations. The creditors claim under the assignment. They stand where the assignors stood when they made it, and cannot resist payment of a debt which they considered valid and subsisting: Cresswell *v.* Altemus, 7 Watts 581 ; Sailor *v.* Hertzog, 2 Barr 184–5. The witness was competent, being entirely disinterested.

2. Mrs. Kutz could not sue a firm of which her husband was a member, though she may be a creditor of her husband, and enforce her rights against him in equity.

3. The note was given, and the money received by the firm, and by that member who was not her husband. It cannot, therefore, be said that the husband reduced her money into possession so as to bar her right. The note was evidence of a determination not to make it his own : Hind's Estate, 5 Whart. 143. This case is also applicable on the plea of the Statute of Limitations. A wife may acquire a separate property in her husband's estate by agreement with him, without the intervention of trustees : McKenna *v.* Philips, 6 Whart. 571 ; Herr's Appeal, 5 W. & S. 494 ; Duffy *v.* Insurance Company, 8 W. & S. 413 ; Hutton *v.* Duey, 3 Barr 105.

4. This money was held by the firm in trust for the wife of one of the members. She could not sue in law : her only remedy was equity, and, therefore, the statute did not run : Kain *v.* Bloodgood, 7 Johns. Ch. R. 114 ; Lyon *v.* Marclay, 1 Watts 275 ; Zacharias *v.* Zacharias, 11 Harris 455 ; Johnston *v.* Humphreys, 14 S. & R. 394.

5. Down to the assignment she could not sue on this note : her remedy was suspended, and the operation of the statute also : Towers *v.* Hagner, 3 Whart. 48. By the assignment, the debts of the assignees were put in process of liquidation, all which are entitled to a share or dividend of the property.

6. She is also entitled to interest. This is not like Hind's

Case, 6 Whart. 143, in this respect.    There the debt was due by the husband alone, and there was no contract to pay interest.

*Frederick Leaf Smith*, for appellees, argued that the proof that the money ever was the separate propery of Mrs. Kutz was insufficient, and that the statute was a bar.    Prior to the Act of 1848, the receipt of the husband of the wife's *choses in action*, or money, was presumed to be a reduction of them to his own possession, unless there was positive, precise, clear, and consistent proof of a contrary intention ; and this only in cases where the evidence was undoubted, and beyond cavil or dispute, that the identical money was the wife's, either received by her before marriage, or afterwards acquired by gift, bequest, or otherwise. If acquired after marriage, the burden is upon her to prove distinctly and unequivocally that it was not furnished by her husband : Johnston's Administrators *v.* Johnston, 1 Grant's Cases 470 ; Gamber *v.* Gamber, 6 Harris 365 ; Winter & Hartman *v.* Walter, Leg. Int. of May 10th 1861 ; Bradford's Appeal, 5 Casey 513 ; Auble's Administrators *v.* Mason, 11 Id. 261, and other cases.    And where a married woman claims in opposition to her husband's creditors, it is not enough to show that she received money of her father before the passage of the Act of 1848 ; for that became the husband's property by virtue of the marriage relation : Walker *v.* Reamey, 12 Casey 410.    There is no such proof in this case.    ·The claim is upon a note alleged to have been given by her husband and his copartner prior to the Act of 1848.    As a contract, it was void for want of parties, as well as consideration, as to the husband, for the law recognises no separate will between husband and wife.

Although the Act of 1848 worked an important change, yet, to bring the property of a married woman under its protection, it is made necessary by the letter, as well as the spirit of the statute, to show that she owns it ; she must identify it as hers ·before marriage, or show how she came by it afterwards, by evidence certain, undoubted, and unequivocal : Bradford's Appeal, 5 Casey 515.

The assignment of Heidenreich & Kutz worked a dissolution of the partnership.    Heidenreich testifies that he never considered it barred by the statute ; that it was always recognised as a just debt ; but when did he so consider it ?    Before or after the assignment ?    When was this claim recognised as a just one ? In the presence of whom, and by whom ?    Is this clear testimony, when not a single cent of interest is paid to this creditor, and no conversation is held with the claimant concerning her note from the time of its execution to the day of the audit ?

The case of Cresswell *v.* Altemus, 7 Watts 581, and Sailor *v.* Hertzog, 2 Barr 184–5, are not parallel with the one in hand.

[Kutz's Appeal.]

The Statute of Limitations is a bar. The acknowledgment of a debt by one partner, after the dissolution of the copartnership, is not sufficient to take the case out of the statute as to the other partners: Bell v. Morrison, Peters's S. C. U. S. Rep. 352 –373; Levy v. Cadet, 17 S. & R. 126; Searight v. Craighead & Ege, 1 Penna. Rep. 135; 5 Penna. L. J. 265. It must be made to the plaintiff or his agent: Gillingham v. Gillingham, 5 Harris 303. When the debt is barred at the death of the decedent, or at the time the assignment is made, the statute operates: Mitcheltree's Administrator v. Veach, 7 Casey 455; McClintock's Appeal, 5 Casey 360.

A wife could always sue her husband in equity. So, too, a husband can sue his wife in equity: Ex parte Strangeways, 8th of April 1747, 3 Atkins 478; for where husband and wife deal with each other, in equity she is regarded as a *feme sole*. Courts in Pennsylvania have long since had equity powers, but a bill would not certainly be entertained after six years.

Since the Act of 1848, this court has said, in Goodyear v. Rambaugh and Wife, that the wife might sustain a suit against the husband at law, if necessary. A suit at law could certainly be maintained against Heidenreich; and, in a joint suit against Heidenreich & Kutz upon the note, and a plea of Kutz that he was the husband of plaintiff, would not have availed Heidenreich, but would have been a personal discharge as to Kutz, and a *nolle prosequi* could have been entered as to him, and judgment recovered against Heidenreich: Beideman v. Vanderslice, 2 Rawle 334; Noke & Chiswell v. Ingham, 1 Wilson 89. The rule that the Statute of Limitations only runs from the death of the husband against the wife, does not apply where the wife claims against her husband and another. Besides, Mrs. Daniel B. Kutz joined with her husband in the assignment for the benefit of creditors, and her acknowledgment to the same was legally taken.

By the Act of 14th April 1838, Pamph. L. of 1837–8, p. 457, relating to the commencement of actions and other matters, it is submitted that the wife could bring suit against the firm; for if the money really belonged to Mrs. Kutz, she is regarded, as to it, as a *feme sole:* she is really the party in direct interest, and the suit would be for her use against the firm of Heidenreich & Kutz—the joinder of her husband being a mere matter of form.

The position that the firm held this money in trust for Sarah Kutz, is erroneous, and the authorities cited for the principle do not sustain it; there is no such relation here as trustee and *cestui que trust*, the relation is that of debtor and creditor, and none other.

The opinion of the court was delivered, July 24th 1861, by

[Kutz's Appeal.]

STRONG, J.—In Towers *v.* Hagner, 3 Whart. 48, it was ruled that when a wife lends the income of her separate estate to her husband, the Statute of Limitations does not begin to run against her claim until the death of the husband. The reason given was, that until then she cannot sue. The debt exists, but the remedy is suspended. The same reason exists in the present case, and is equally efficient to protect the appellant against the operation of the Statute of Limitations. On the 25th of November 1845, she lent $500 to her husband and William Heidenreich, then trading under the firm of Heidenreich & Kutz, and took their note, payable with interest, in one year thereafter. The firm continued in existence until August 8th 1857, when it was dissolved by a general assignment in trust for the benefit of creditors, and its assets are now being marshalled for distribution. It is clear that at law the appellant could have maintained no suit against the promissors in the note. Even since the Act of 1848 a married woman cannot maintain an action against her husband on a contract made during coverture, even though she sues by her next friend: Ritter *v.* Ritter, 7 Casey 396; and in a suit upon any contract made with her, her husband must join. She cannot sue without him even for her separate estate. In equity, in certain cases, she may indeed sue her husband: 1 Daniel's Ch. Prac. 143, and notes. Perhaps the appellant could have done so in this case, treating him and his copartners as trustees for her. But if the money was held in trust, not recoverable at law, but exclusively in equity, the Statute of Limitations did not run: Kain *v.* Bloodgood, 7 Johns. Ch. 114; Zacharias *v.* Zacharias, 11 Harris 455. Besides, in equity a party is barred not by the statute itself, but only in analogy to it. Where a remedy, if one existed, would not be barred at law, relief in equity will not be denied. All the exceptions and disabilities which prevent the running of the statute against a suit at law are equally efficacious in a court of equity. Of these disabilities coverture is one. Consequently the appellant having been all the time, from the date of the note up to the assignment made by the firm, the wife of one of the promissors, is not barred of her claim by the statute.

It would be superfluous to inquire whether the testimony of William Heidenreich sufficed to take the case out of the operation of the statute. In such an inquiry we might adopt the view of the appellees, but the appellant's case is saved by the fact of her coverture.

On the argument in this court, it was insisted there was no satisfactory evidence that the money borrowed of Mrs. Kutz by Heidenreich & Kutz was not the property of her husband. It is, however, quite apparent that no such position was taken before the auditor, or in the court below. The only objection to the

[Kutz's Appeal.]

note of the appellant made by the creditors, as stated by the auditor, was that it was barred by the Statute of Limitations. And there is evidence that the money lent to the assignors was at the time of the loan the property of the wife. A witness stated that he understood that she got it from the Heffners' estate. It was not indeed proved how the witness knew that she there got it, nor that Heffner was her father. Facts within the knowledge of parties are ofttimes taken for proved before auditors and arbitrators, and if there be no objection made at the time, a party ought not to be heard to object afterwards. And if the money which Mrs. Kutz lent was received by her from her patrimonial estate, her husband was not bound to assert his marital rights even in favour of his creditors: Dennison v. Nigh, 2 Watts 90. A wife may also acquire a separate property in equity by an agreement with her husband even without the intervention of trustees: McKennan v. Philips, 6 Whart. 571; Duffy v. Ins. Co., 8 W. & S. 413. Her own property he may leave to her. Such an arrangement was made in the present case. The wife was permitted to receive her property and to lend it, the husband himself becoming the borrower. It is not for him, therefore, to object that the money was not hers, nor for the creditors claiming through him, who, for aught that appears, became creditors long after the loan was made.

Upon the whole, we think there was error in disallowing the claim of Sarah Kutz, for a dividend upon the amount of the note and interest, the sum lent bearing interest by express contract.

The decree of the Court of Common Pleas is reversed, and it is ordered that the appellant be allowed in the distribution the sum of $408.31, and it is ordered that the costs of this court be paid by the appellees.